OZIAS RHEA v. C. F. WHITE AND JOHN HIX.

LAND. *Partition. Consideration.* A person holding possession and title to an undivided interest in land under an executed deed may have partition thereof, although the consideration of the deed may have been illegal because in contravention of public policy.

FROM MONROE.

Appeal from the Chancery Court at Madisonville. W. M. BRADFORD, Ch.

W. B. STEPHENS for complainant.

T. E. H. McCROSKEY and R. K. ROBINSON for defendants.

COOPER, J., delivered the opinion of the court.

This bill was filed on May 19, 1877, for the partition of a tract of land, of which, according to its allegations, the complainant and the defendants were the owners as tenants in common. The interest of the complainant is stated to be six-eighths and one-fifth of one-eighth, purchased by him from the defendant White, and conveyed to him by a duly registered deed, a certified copy of which is made an exhibit. The deed bears date February 28, 1863, was duly acknowledged for probate by White on July 29, 1863, and registered on the 26th of October of the same year. It is a formal conveyance by White to Rhea of six undivided eighths of the land, with covenants of seizin, warranty, and against encumbrance, except the encumbrance of the life estate of Sallie Hicks, who, the deed says, is then residing on the land. The complainant avers, and the proof shows that the said Sallie Hicks continued to reside on the land until her death, about one year before the filing of the bill. The consideration recited in the deed for the conveyance is, that "Ozias Rhea is mustered into the service of the Confederate States of America as a substitute in the room and stead of the said C. F. White, private in Co. G, 59th Regiment Tennessee volunteers, for the unexpired term of three years or during the war, for which time the said White enlisted, being for three years or during the war, dating

from the 15th day of March, 1862." The deed con-cludes thus: "This conveyance to be void only in the event the said Ozias Rhea is not mustered in the service as aforesaid, and the said C. F. White discharged therefrom." By an amendment to the original bill, it was averred that complainant was mustered into the service of the Confederate States as a substitute, in the room and stead of defendant White, as stipulated, and that White was discharged from said service. The defendant White answered the bill, proof was taken, and on final hearing the chancellor dismissed the bill, and the complainant appealed.

The bill in this case proceeds upon the idea that the complainant is the owner of an undivided interest in the land, and entitled to partition. This can only be, according to the statute, where the claimant is: "holding and being in possession" of the land sought to be partitioned: Code, sec. 3262. The bill assumes, without asserting that the complainant is in possession, and the answer makes no issue upon the point except inferentially by relying as a defense on the statute of limitations. The complainant proves himself, and by another witness, that shortly after the death of Sallie Hicks, he went upon the land, and rented it for one year to a person previously in possession under the life tenant, but the complainant admits that the rent was not paid to him, and says that it was collected by the defendant White. White himself in his deposition says nothing on the subject. He has by his pleadings narrowed the controversy to one of title, and that, too, without making any point on the juris-

diction of the court to settle the title in a suit for partition. Under these circumstances, the decision may well be limited to the questions raised by the pleadings, and alone argued by counsel.

The deed says: "I, C. F. White, have this day bargained and sold, and do hereby transfer and convey to Ozias Rhea, his heirs and assigns," the land in controversy, describing it, "in consideration that the said Ozias Rhea is mustered into the service," &c. The deed further provides that "this conveyance is to be void only in the event the said Ozias Rhea is not mustered into the service as aforesaid, and the said C. F. White discharged therefrom." The first point made in defense is, that the complainant failed and refused to comply with his undertaking as a substitute for the defendant in the Confederate service. The proof is, that complainant and defendant went together to Vicksburg, where company G and the 59th regiment of Tennessee volunteers then were, and the complainant was mustered into the service of the Confederate States in company G, as a substitute for, and in the room and stead of the defendant, and the defendant was mustered out and discharged from the service. The complainant remained with the army until Vicksburg was captured, and he taken as a prisoner. He was paroled by the Federal commander, and returned home, and was never exchanged. His health was so impaired that the acting commander of his company advised him to remain at home when the Confederate army left Tennessee. The deed for the land in controversy, although executed before the

parties left for Vicksburg, was not acknowledged by the defendant for probate until the complainant returned home as a paroled prisoner. The defendant never was again called upon to do service under his original engagement from which he had been discharged, and, as he himself testifies, "never was mustered into the Confederate army after the fall of Vicksburg." The consideration was fully performed in its essential element, the discharge of the defendant from the Confederate service; and the failure of the complainant, if there was a failure in any respect, to perform his duty as a soldier after he was paroled, while it might have made him liable to the military authorities of the Confederate government, was no breach of his contract with the defendant.

Some testimony is introduced tending to show that there was an order of the Confederate government requiring persons who had furnished substitutes, and whose substitutes had deserted, to return to their places in the ranks. But the evidence falls far short of proving that any such order was ever made; and it is certain that the defendant never obeyed it. He left home when the Federal troops occupied East Tennessee, but not with his regiment, or with the Confederate army, and seems for a time to have joined a company of scouts. But this act on his part had no connection with his original engagement of service, from which he had been released by the acceptance of the complainant as his substitute.

It is next insisted that the contract shown by the deed, which is made a part of the bill, and by the

evidence, is one in contravention of the public policy
of the government of the United States, in aid of the
rebellion then flagrant, and void.    If this were an
action brought to enforce a contract based upon the
consideration set out in the deed in question, it would
raise the point suggested by the argument, and one
of grave difficulty.    But, as we have seen, it is a
bill for partition by the owner of the legal title,
"holding and being in possession" of the land.    The
conveyance was probably perfected when signed and
delivered, and certainly when, after the consideration
had been complied with by the mustering in of the
complainant as a substitute and the discharge of the
defendant, the defendant acknowledged the deed for
probate, and it was registered.    Nothing more re-
mained to be done to complete the contract.    The
complainant stands upon his title and possession, and,
there being no failure of consideration, the defendant
cannot resist his right to partition except by asking
the active aid of the court to cancel the deed, and
restore him to the possession.    But the very illegality
which would repel the complainant from enforcing the
contract if unexecuted, would equally repel the defend-
ant from obtaining relief after it is executed.    A per-
son who has freely parted with the title to property
upon an illegal contract, fully executed, being in *pari
delicto*, cannot invoke the aid of the courts to regain
the property: *Smith* v. *Smith*, 5 Lea, 253.    The law
leaves the parties where it finds them, but will, at
the same time, give to the party whose title is com-
plete all the legal redress to which he may be enti-

tled as the owner and possessor of the property, not-withstanding the illegality of the original consideration. For, the deed is no longer a contract, but a muniment of title, and the consideration has ceased to exist.

There is no ground for imputing fraud to the complainant in the procurement of the deed, but if there were, the defendant could only obtain the benefit of the fraud by asking the active interposition of the court, which he has not done, and could not do for the reason already given. And there could be no running of the statute of limitations, in favor of any one, against the complainant pending the life estate of Sallie Hicks.

The chancellor's decree must be reversed, and the partition asked for ordered. The defendant White will pay all the costs of the cause up to this time. The costs of the partition will be borne by the parties in proportion to their respective interests in the land.